**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BETSY VEGA, | : | |
| Plaintiff, | : | CIVIL ACTION NO:  3:24-cv-01478-VAB |
| | : | |
| v. | : | |
| | : | |
| MOBIS PARTS AMERICA, LLC, | : | |
| | : | DECEMBER 5, 2025 |
| Defendant. | : | |
| | : | |

**DEFENDANT MOBIS PARTS AMERICA, LLC'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The undisputed record demonstrates that—when applying for a job at Mobis Parts America, LLC ("Mobis")—Plaintiff misrepresented both her education and her possession of a medical marijuana card.  Plaintiff admits she obtained a conditional offer of employment at Mobis after falsifying her Mobis application by claiming she had a General Education Development certificate ("GED") when she did not.  Plaintiff also failed her pre-employment drug test, but then claimed she had a medical marijuana card.  This was another lie; Plaintiff admitted in her deposition that the marijuana for which she tested positive was illegally obtained and she did not actually have a marijuana card.  After Plaintiff failed to timely provide the required GED documentation (because she didn't have it), Mobis rescinded Plaintiff's conditional offer of employment.  This lawsuit followed.

The first seven counts of the Complaint allege violations of the Americans with Disabilities Act Amendments Act of 2008 ("ADA") and the Connecticut Employment Practices Act ("CFEPA") and each is based on Plaintiff suffering from a disability.  But the undisputed

facts demonstrate that Plaintiff's claim is based on her testing positive for marijuana use rather than any disability—she testified she did not even inform any Mobis employee about her purported post-traumatic stress disorder ("PTSD"). Use of marijuana is not a disability under either statute. Putting aside that even the use of medical marijuana is not a disability under the law, Plaintiff concedes that her use of marijuana was illegal. Plaintiff's first seven counts of the Complaint should be dismissed for this reason alone.

But these counts all fail for additional reasons beyond that the use of marijuana is not a disability. Plaintiff's claims for discrimination (Counts One and Four) should be dismissed because Plaintiff cannot establish an inference of discrimination and cannot establish that Defendant's decision to rescind her employment offer was motivated by discrimination rather than her failure to provide a GED. Plaintiff's failure to accommodate claims (Counts Two and Five) should be dismissed because Plaintiff never sought an accommodation for any disability. Plaintiff's retaliation claims (Counts Three and Six) should be dismissed because Plaintiff never complained about any mistreatment on the basis of a disability and even if she did, she could not establish a causal connection between said complaint and her termination from employment. Finally, Plaintiff's claim for aiding and abetting a violation of CFEPA (Count Seven) should be dismissed for the foregoing reasons and because there is no other entity whose action Mobis aided and abetted.

The remaining eighth count alleges a violation of the Palliative Use of Marijuana Act ("PUMA"), Conn. Gen. Stat. § 21a-408p. To establish a PUMA claim, a plaintiff must establish that the _sole_ reason for discharge was their status as a qualifying patient, and there was no other legitimate reason for their discharge. Here, Plaintiff's claim should be dismissed for two equally

compelling reasons.  First, Plaintiff admits she tested positive for illegally obtained marijuana, so she was not a qualifying patient.  She only obtained a medical marijuana license *after* failing the test.  Second, Plaintiff's offer of employment was rescinded for her failure to present evidence of a GED.

For the foregoing reasons and as set forth below, summary judgment should enter dismissing Plaintiff's Complaint.

I.    FACTUAL BACKGROUND

A.    **Plaintiff Admits She Lied On Her Job Application To Mobis About Having A GED**

Plaintiff was assigned by Staffmark, a temporary staffing agency, to work at Mobis's South Windsor Facility commencing on October 18, 2021, as a material processor.  Vega Deposition Transcript ("Dep."), 15:2–16:16:10, 19:3–9. On February 17, 2022, Plaintiff submitted an application for direct employment with Mobis.  Ex. B[1]; Ex. 1, Vega Dep., 22:10–23:6.  She testified she understood it was important to be truthful in her application.  Ex. 1, Vega Dep., 23:4–6. In the education section of her application, she noted she had attended Putnam High Vocational in Springfield, Massachusetts, but rather than stating she obtained a degree, Plaintiff selected "General Development Test."  Ex. B.  That selection was false.  Ex. 1, Vega Dep., 46:10–14.

Plaintiff never took a General Development Test or earned a GED.  Specifically, Plaintiff acknowledged that she lied on the application and in fact had never taken a General Development Test or obtained a General Education Development certificate ("GED").  Ex. 1, Vega Dep., 46:10–14.  The same day she filed the false job application, she received a

---

[1] All Exhibits lettered B – J are attached to Exhibit 1 and were entered as exhibits during Plaintiff's deposition.

conditional offer of employment.  Ex. C.

**B.     After Submitting A False Job Application, Plaintiff Receives A Conditional Offer Of Employment That Is Contingent On A Background Check And Drug Screening.**

Plaintiff's conditional offer of employment stated that her start date would be March 14, 2022, but that the offer was contingent on the results of a background check and pre-employment drug screening.  Ex. C.  Plaintiff confirmed that she knew that the offer was contingent on successfully passing the background check and drug screening.  Ex. 1, Vega Dep., 26:12–23.

Plaintiff's drug test was positive for marijuana.  Ex. N.[2]   On March 16, 2022, Plaintiff called Ed Jones, her facility manager, and informed him that she had failed the drug test, but claimed she had a medical card and was prescribed marijuana for sleeping problems.  Ex. D. The excuse Plaintiff gave to Jones was a lie.  Specifically, Plaintiff admitted in her deposition that, despite what she told Jones, the marijuana that she testified positive for was illegally obtained.  Ex. 1, Vega Dep., 43:1–44:13.  After failing the test, she started inquiring about how to obtain a medical marijuana card.  Ex. 1, Vega Dep., 37:5–38:23.

While this delayed her start date, Plaintiff continued working for Mobis through Staffmark while Mobis personnel determined next steps.  Ex. D.  On April 21, 2022, Victoria Andrews, Senior HR Business Partner, both called and emailed Plaintiff to inform her that if she provided photos of her medical marijuana card on or before April 27, 2022, she could continue with the hiring process.  Ex. O.  But Plaintiff did not yet have any medical marijuana card. Plaintiff, on April 26, 2022, informed Andrews that she had an appointment—presumably to obtain a medical marijuana card—on April 28, 2022.  Ex. F.

On May 4, 2022, Plaintiff provided Andrews with a medical marijuana registration

---

[2] All Exhibits lettered N – R are attached to Exhibit 5.

4

certificate that she had obtained on May 2, 2022.  Ex. G.  Plaintiff testified this was the *first* time she obtained a medical marijuana card.  Ex. 1, Vega Dep., 37:5–8.  The next day, Andrews responded that she would work on a new offer letter.  Ex. H.

   **C.  <u>Plaintiff Admits She Never Spoke To Any Mobis Employee About Having PTSD, Or, At Best, She Was Not Sure If She Told Anyone</u>**

Plaintiff has no evidence that she told anyone at Mobis that she suffered from PTSD.  In her deposition, Plaintiff claimed she obtained her medical marijuana card for PTSD.  Ex. 1, Vega Dep., 37:9 (called one of cousin's doctors, does not recall name), 67:15–17 ("I can't sleep at night, so I mean, I go through stuff.  So I just figured PTSD is the right thing and that's what I got diagnosed with, so …")  As noted here, Plaintiff only sought her medical marijuana card after she tested positive for illegal marijuana use.  In any event, Plaintiff admits that she did not speak with any Mobis employee about her alleged PTSD. Ex. 1, Vega Dep., 28:20–29:10 (So you didn't go into details about, oh, this is for PTSD.  A. No."), 56:7–9 ("Did you speak with anyone about anything at all with respect to your having PTSD?  A. No.").   The Mobis employees confirmed that Plaintiff never spoke with them about her alleged PTSD.  Ex. 2, Jones Dep., 24:1–4 (Do you remember if she ever brought up post-traumatic stress disorder, PTSD with you? A  I don't."); Ex. 3, Walker Dep., 16:23–17:1 ("Had you received any notice that Ms. Vega suffered from post-traumatic stress disorder?  No."); Ex. 5, Marquez Aff., ¶ 7 ("Ms. Vega at no point informed me that she suffered from post-traumatic stress disorder (PTSD).").  After admitting that she did not speak with any Mobis employee about her alleged PTSD, Plaintiff hedged a bit later in the deposition and said she was not sure if she spoke with someone.  Ex. 1, Vega Dep., 66:25–67:22 ("Did you notify anyone who worked for Mobis that you have PTSD specifically? A. Not sure.").  Not being sure is not credible evidence.

**D.**      **Plaintiff Fails To Provide Mobis With Verification That She Graduated High School.**

In the process of preparing a new offer letter for Plaintiff, Andrews saw that Plaintiff's background check had been unable to verify her having graduated from high school.  Ex. H; Ex. P.  Andrews then called and emailed Plaintiff on May 11, 2022, informing her that she needed to provide a high school diploma or GED.  Ex. H.

Andrews was scheduled to go on leave in May.  Before leaving, Andrews informed Liliana Marquez, who would be filling in for her, that Plaintiff told Andrews that she did not have any interest in obtaining a GED.  Ex. Q.  On May 20, 2022, Jones informed Marquez that Plaintiff had a GED but could not find it, and could simply re-take the test.  Ex. Q.  Marquez then notified Plaintiff by phone and email that she had a tentative start date of July 5, 2022, which was contingent on receipt of the GED Certificate and medical marijuana documentation.  Ex. I.  Plaintiff responded that she had misplaced her GED, but "was willing to take another course to get it."  Ex. I.  Plaintiff admitted in deposition that this was yet another lie.  Specifically, Plaintiff admitted that she lied to Marquez about misplacing her GED (she never had one). Ex. 1, Vega Dep., 49:17–50:6.

Plaintiff testified that she knew she was to provide both a GED and a medical marijuana certificate by July 5, 2022.  Ex. 1, Vega Dep., 51:12–15.  She did not testify about any communications or discussions about her alleged PTSD.  As of July 5, 2022, Plaintiff had not submitted any documentation demonstrating she had obtained a GED.  Thus, Marquez sent Plaintiff an email rescinding the offer letter.  Ex. J.  Marquez also spoke with Plaintiff on the phone; Plaintiff was not upset by the information that the offer letter was being rescinded.  Ex. 4, Marquez Dep., 23:19–24:18, 29:9–12.  She then decided not to pursue any other temp

6

opportunities through Staffmark.  Ex. 1, Vega Dep., 57:5–22.

## II.     STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; its requirement is that there be no *genuine* issue of *material* fact." (Emphasis in original.)  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). For purposes of a motion for summary judgment, a fact is material if it "might affect the outcome of the suit under the governing law." *Id.*, at 248.  An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

An employer is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Spiegel v. Schulmann,* 604 F.3d 72, 80 (2d. Cir. 2010).  "Unless the nonmoving party offers 'some hard evidence showing that its version of the events is not wholly fanciful[,]' summary judgment is granted to the moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007); Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... and … it should be interpreted in a way which allows it to accomplish this purpose.").

Applying these standards, summary judgment is warranted on Plaintiff's Complaint.

## III.     ARGUMENT

### A.      <u>Summary Judgment Should Be Granted On Counts One Through Seven Because The ADA And CFEPA Do Not Protect Marijuana Use Of Any Kind.</u>

Counts One through Seven of Plaintiff's Complaint are predicated on the allegation that she suffers from a disability.  In the ADA context, "[t]he term 'disability' means, with respect to an individual – (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102.  A physical disability for purposes of the CFEPA is a "chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness…." Conn. Gen. Stat. §46a-51(15).   An individual with a mental disability for purposes of the CFEPA is one "who has a record of, or is regarded as having one or more mental disorders, as defined in the most recent edition of the American Psychiatric Association's 'Diagnostic and Statistical Manual of Mental Disorders." Conn. Gen. Stat. § 46a-51(20).

Courts have frequently dismissed cases where plaintiffs brought ADA or CFEPA claims but were unable to plead or prove they were disabled as defined by the statute.  For example, in *Scillia v. Am. Educ. Servs*., the court dismissed the failure to accommodate claims of a *pro se* plaintiff, holding "simply alleging an unspecified learning disability without any explanation as to what 'major life activities' it limits is not sufficient to survive a motion to dismiss."  *Scillia v. Am. Educ. Servs.*, No. 3:22-CV-1257 (JAM), 2024 U.S. Dist. LEXIS 74486, *9 (D. Conn., Apr. 24, 2024).  Likewise, in *Puccinelli v. S. Conn. State Univ.*, the plaintiff alleged that she suffered from anxiety and PTSD, but the complaint did not include facts demonstrating these conditions substantially limited major life activities, thus the court dismissed the complaint. *Puccinelli v. S. Conn. State Univ.*, 3:21-CV-00763 (SVN), 2022 U.S. Dist. LEXIS 185281, *37 (D. Conn., October 11, 2022).  In *Barbabosa v. Manchester Bd. of Educ.*, No. HHD CV-16-6069912-S,

8

2018 Conn. Super. LEXIS 3924, at *14 (Jan. 11, 2018), the Court granted summary judgment, holding that that the plaintiff did not establish that she had a mental disability under the CFEPA because her only evidence of a disability was that she told a human resource specialist she suffered from anxiety and depression. This was insufficient in the absence of medical documentation evidencing such a diagnosis.

With specific relevance to this case, both federal and state courts have held that CFEPA and the ADA do not provide protection for medical marijuana use because they "focus on the discrimination based on disability rather than discrimination based on treatment." *Bulerin v. City of Bridgeport*, No. FBTCV196083042S, 2019 Conn. Super. LEXIS 517, at *16-17 (Mar. 8, 2019) (finding PUMA provides a private right of action in part because CFEPA and ADA do not provide one for qualifying patients); *Eccleston v. City of Waterbury*, No. 3:19-cv-1614 (SRU), 2021 U.S. Dist. LEXIS 52835, at *17-18 (D. Conn. Mar. 22, 2021) ("Because medical marijuana does not fit within the supervised-use exception and remains illegal under federal law, an individual who uses medical marijuana cannot state a *prima facie* case under the ADA for discrimination on the basis of medical marijuana use."). Thus, to demonstrate she is in a protected class, Plaintiff must prove that she suffered from a disability, and any claimed discrimination must relate to her disability. Here, she testified that PTSD was the reason she gave the doctor to get the medical marijuana card, but that she did not recall speaking with any Mobis employee about having PTSD. Ex. 1, Vega Dep., 28:20–29:10, 56:7–9, 66:25–67:22. Rather, all of her claims relate to her use of (purportedly) medical marijuana. Thus, each of her ADA and CFEPA claims should be dismissed.

Counts One and Four allege disability discrimination. Plaintiff could not recall specifically informing any Mobis employee of her PTSD diagnosis. Ex. 1, Vega Dep., 28:20–29:10, 56:7–9, 66:25–67:22. Furthermore, she has not presented any documentation of a PTSD diagnosis. *See, e.g.*, Ex. G (medical marijuana card does not state underlying condition for which marijuana prescribed). Thus, Counts One and Four should be dismissed. *Scillia*, 2024 U.S. Dist. LEXIS 74486 at *9; *Puccinelli*, 2022 U.S. Dist. LEXIS 185281, at *37; *Eccleston*, 2021 U.S. Dist. LEXIS 52835, at *17-18.

With respect to Counts Two and Five, any reasonable accommodation related to a disability would have to be related to Plaintiff's purported PTSD itself as opposed to a treatment for PTSD such as marijuana use. *See Bulerin*, 2019 Conn. Super. LEXIS 517, at *16-17 (CFEPA and ADA "focus on the discrimination based on disability rather than discrimination based on treatment"); *Eccleston*, 2021 U.S. Dist. LEXIS 52835, at *17-18 ("Courts have additionally rejected the argument that discrimination on the basis of medical marijuana use reflects discrimination on the basis of the disability the medical marijuana is used to treat."). Given that she has not established that she informed any Mobis employees that she suffers from PTSD, or even that she in fact suffers from it, her failure to accommodate claims can be dismissed on this ground. Ex. 1, Vega Dep., 28:20–29:10, 56:7–9, 66:25–67:22.

With respect to Count Three claiming ADA retaliation "a plaintiff must prove that 'but for' the disability, the adverse action would not have been taken." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023). Likewise as to Count Six, a CFEPA retaliation claim requires the plaintiff to "raise a triable issue of fact as to whether [her] disability was a 'motivating factor' in [her] termination." *Begin v. Becton, Dickinson & Co.*, No. 3:21-cv-1329 (VAB), 2023 U.S. Dist.

LEXIS 140238, at *18 (D. Conn. Aug. 11, 2023). Plaintiff cannot establish a retaliation claim because she only reported her marijuana use to Defendant, not any purported disability. No evidence suggests any connection between her purported disability itself and any employment decisions. Furthermore, Mobis decided to withdraw her employment offer because of her failure to provide a GED after she made multiple misrepresentations about having one.

Finally, Count Seven for aiding and abetting disability discrimination requires underlying disability discrimination. For the reasons stated above, there is no such underlying discrimination. Therefore, Mobis cannot have aided and abetted any such discrimination. Again, all the evidence is about Plaintiff's marijuana use; none pertains to her purported disability.

The undisputed facts demonstrate Plaintiff's claims are about her marijuana use. Any claim under Title VII or CFEPA would need to pertain to a disability. But Plaintiff admits that her marijuana use was illegal and not related to a disability. Even if her marijuana use was a treatment for a disability, it would not be accorded protection. The only thing accorded protection would be a disability, but, again, Plaintiff never even informed a representative of Mobis about her purported PTSD. Thus, Counts One through Seven should be dismissed for this reason alone.[3]

B.      **There Are Additional Reasons Why Summary Judgment Should Be Granted On Counts One Through Seven.**

1.      **Summary Judgment should also be granted as to Counts One and Four because Plaintiff cannot establish an inference of discriminatory animus.**

---

[3] The remaining Count Eight, pursuant to PUMA, is discussed in Section III.C. *infra.*

To prove a discrimination claim under the ADA or CFEPA, Plaintiff must first establish a prima facie case of discrimination by demonstrating that: (1) she is a member of a protected class, i.e., that she suffered from a disability; (2) she was qualified for the position; (3) she was subjected to an adverse employment decision; and (4) there exists circumstances which give rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir. 1997), cert. denied, 522 U.S. 1075 (1998); *Koenig v. City of New Haven*, No. 16-CV-514, 2018 U.S. Dist. LEXIS 46819, at *8 (D. Conn. Mar. 21, 2018) ("Courts analyze claims of discrimination and retaliation pursuant to [the CFEPA] by applying the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green* ...."). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015), *see also Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) (summary judgment affirmed where "Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient.").

Here, Plaintiff has not testified to any invidious comments or descriptions of her in degrading terms. Furthermore, the sequence of events leading up to Mobis rescinding her employment offer does not suggest any animus. Both Andrews and Marquez continued the hiring process after Plaintiff informed them about her use of medical marijuana. It was only after she failed to present a GED that Mobis rescinded the employment offer.

    **2.**     **Summary Judgment should also be granted as to Counts One and Four because Plaintiff's failure to obtain a GED is a legitimate nondiscriminatory reason for Mobis's decision to rescind her employment offer; Plaintiff cannot show discriminatory animus was a motivating factor in this decision.**

Once the plaintiff makes out a *prima facie* case of disability discrimination, "[t]he employer may then rebut the *prima facie* case by stating a legitimate, nondiscriminatory justification for the employment decision in question . . . . The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." (Citations omitted; internal quotation marks omitted.) *Feliciano v. Autozone, Inc.*, 316 Conn. 65, 74 (2015). "[T]o satisfy the third-stage burden under *McDonnell Douglas* and survive summary judgment …, a plaintiff may, but need not, show that the employer's stated reason was false, and merely a pretext for discrimination; a plaintiff may also satisfy this burden by producing other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class." *Bart v. Golub Corp.*, 96 F.4th 566, 576 (2d Cir. 2024).

Even if Plaintiff could establish an inference of discrimination, this would only shift the burden to Mobis to establish a legitimate nondiscriminatory reason for the termination. *Feliciano*, 316 Conn. at 74, *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). Once Mobis establishes such a reason, "the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, 'it is not enough ... to disbelieve the employer; the fact finder must also believe the plaintiff's explanation of intentional discrimination.'" *Weinstock v. Columbia University*, 224 F.3d 33, 43 (2d Cir. 2000). The plaintiff may satisfy this burden under CFEPA by demonstrating

13

that her disability was a motivating factor in the adverse employment decision. *Wallace v. Caring Sols., LLC*, 213 Conn. App. 605, 627 (2022). In contrast, "the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky v. City of N.Y.*, 921 F.3d 337, 348 (2d Cir. 2019).

"[P]roof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct. . . . In other words, it is not enough . . . to disbelieve the employer; the factfinder must believe the [complainant's] explanation of intentional discrimination." *Bd. of Educ. of Norwalk v. Comm'n on Human Rights & Opportunities*, 266 Conn. 492, 508 (2003) (internal quotation marks omitted). "Only where an employer's business decision is so implausible as to call into question its genuineness should [a c]ourt conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara USA, Inc.*, 371 F. Appx. 115, 118 (2d Cir. 2010).

"Where the plaintiff fails to prove that [his] disability played any role in the defendant's decision … and, therefore, was not a motivating factor" judgment for defendant is proper. *Wallace v. Caring Sols., LLC*, 213 Conn. App. 605, 628 (2022) (affirming judgment for defendant following completed trial). To be probative, evidence must serve to undermine the employer's stated reason for the challenged employment decision. *See, e.g.*, *Gonzalez v. City of New York*, 845 F. Appx. 11, 15 (2d Cir. Feb. 9, 2021) (finding no showing of pretext where plaintiff failed to adduce evidence to undermine the employer's legitimate, non-discriminatory reason).

Here, Plaintiff's failure to provide a GED certificate is a legitimate nondiscriminatory reason for Mobis to withdraw her employment offer. Ex. 4, Marquez Dep., 25:14–16. The

14

evidence demonstrates that she had conflicting claims about her GED.  She wrote on her application that she had a GED. Ex. B.  Plaintiff admits that was a lie. Ex. 1, Vega Dep., 46:10–14.  She also represented to Jones that she had a GED, and could easily take the exam to get one. Ex. Q.  Plaintiff admits that was another lie. Ex. 1, Vega Dep., 46:10–14.  In any event, when Marquez informed Plaintiff that she had a month in which to provide a GED, she said she could do so.[4]  Ex. I; Ex. 1, Vega Dep., 49:17–50:6, 51:12–15.  Plaintiff neither provided a GED, nor did she request additional time to get one.  Plaintiff cannot raise an issue of fact suggesting that a disability was the real reason for Mobis withdrawing her employment offer.  Thus, summary judgment should be granted dismissing her discrimination claims for this reason in addition to those above.

### 3.    Summary Judgment should also be granted as to Counts Two And Five because Plaintiff never sought a reasonable accommodation.

The ADA and CFEPA apply the same standard for claims of failure to accommodate a disability. *See Martinsky v. City of Bridgeport*, 504 Fed. Appx. 43, 48 (2d Cir. 2012). Plaintiff must show that "(1) [s]he is disabled within the meaning of the [statute], (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant] despite knowing of [the plaintiff's] disability, did not reasonably accommodate it." *Gaillard v. Southwestern Connecticut Agency on Aging, Inc.*, 2014 Conn. Super. LEXIS 2654 (October 23, 2014), *citing Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 415 (2008), *see also Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025).

Reasonable accommodations are defined as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is

---

[4] As Michael Walker, Plaintiff's direct supervisor, testified, a GED can be obtained in a single day.  Ex. 3, Walker Dep., 30:24–31:9.

customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. §1630.2(o)(1)(ii). "The employee bears the burden of initiating the interactive process and 'must come forward with some suggestion of accommodation…." *Kovachich v. Dep't of Mental Health & Addiction Servs.*, 344 Conn. 777, 803 (2022). Examples of accommodations may include "(1) making facilities used by employees readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions." 34 C.F.R. § 104.12(b)

Here, there was no reasonable accommodation Plaintiff requested. She did not request leave or any alterations to the workplace. To the extent she claimed she requested to be employed by Mobis while using medical marijuana, there is no evidence that Mobis denied this request. Both Andrews and Marquez made clear that if she presented the proper paperwork, she could be employed while using medical marijuana. As described above, her termination from employment was based on the failure to provide a GED. *See* Section III.B.2, *supra*. For these reasons as well as those stated above, summary judgment should be granted dismissing her Reasonable Accommodation claims.

    **4.**    **Summary Judgment should also be granted as to Counts Three and Six because Plaintiff never engaged in any protected activity and even if she did she could not establish a causal connection between any such activity and the decision to rescind her employment offer.**

To establish a *prima facie* claim of retaliation under the CFEPA or the ADA, Plaintiff must show (1) that she participated in a protected activity; (2) that Mobis knew of the protected activity; (3) an adverse employment action against her; and (4) a causal connection between the protected activity and the adverse employment action. *See Ayantola v. Board of Trustees of*

*Technical Colleges*, 116 Conn. App. 531, 536 (2009); *Ibela v. Allied Universal*, No. 21-1995-cv, 2022 U.S. App. LEXIS 12155, at \*5 (2d Cir. May 5, 2022).

"The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination...." *Agosto v. Premier Maintenance, Inc.*, 185 Conn. App. 559, 587 (2018). "An employee's complaint may qualify as protected activity ... so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.... The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Id.*, 587, *see also Ibela,* 2022 U.S. App. LEXIS 12155, at \*5.

As stated above, pursuant to the ADA, "[w]ith respect to causation, a plaintiff must prove that 'but for' the disability, the adverse action would not have been taken." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023). "It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Vega*, 801 F.3d at 90–91. Plaintiff must provide "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845 (2d Cir. 2013), *citing Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). In contrast, again, a CFEPA claim requires the plaintiff to "raise a triable issue of fact as to whether [her] disability was a 'motivating factor' in his termination." *Begin v. Becton, Dickinson & Co.*, No. 3:21-cv-1329 (VAB), 2023 U.S. Dist. LEXIS 140238, at \*18 (D. Conn. Aug. 11, 2023). If the plaintiff demonstrates a prima facie case, the defendant must come forward with a genuine nonretaliatory reason for the employment action. *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002). The plaintiff must then demonstrate that retaliation was the real reason for the employment action. *Id.*

17

Here, Plaintiff did not engage in any protected activity. Tthere is no evidence that at any point Plaintiff complained that she was being mistreated based on her purported PTSD. All her communications pertained to her attempts to obtain a medical marijuana card, then her claims that she had a GED, then her claims that she would get a GED. There is no documentation of Plaintiff making any complaints, nor did she testify about anything she said or did to protest or oppose statutorily prohibited discrimination—which, again, would have to be based on a disability, not marijuana use. Thus, Plaintiff cannot establish that she participated in protected activity or that Mobis knew of any protected activity. Furthermore, even if she did engage in protected activity, she cannot establish a causal connection to her termination, which as described above was based on her failure to provide a GED. *See* Section III.B.2, *supra*. Finally, under either the ADA or CFEPA standard she cannot show that any complaint about her purported disability was the real reason for the decision to rescind her employment offer. For these additional reasons, summary judgment should be granted dismissing her retaliation claims.

**5. <u>Summary Judgment should be granted on Count Seven, for aiding and abetting a violation of CFEPA, because for the reasons stated above, Plaintiff cannot establish any discriminatory employment practice, and the only tangible employment action at issue is Mobis's decision to retract Plaintiff's job offer.</u>**

Under the CFEPA, it is a discriminatory practice for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so." Conn. Gen. Stat. § 46a-60(b)(5). "The law in Connecticut is clear that while an individual employee may be held liable for aiding and abetting his employer's discrimination, an employer cannot be liable for aiding and abetting its own discriminatory conduct." *Therault v. Town of Madison*, No. 3:23-cv-01301-MPS, 2025 U.S. Dist. LEXIS 76128, at *30 (D. Conn. Apr. 22, 2025). Generally, this statutory section is

18

used to extend liability to employees who "ratified, endorsed and perpetrated" the discriminatory actions of the employer. *Wasik v. Stevens Lincoln-Mercury, Inc.,* No. 3:98-CV-1083(DJS), 2000 U.S. Dist. LEXIS 15438, at \*24 (D. Conn. Mar. 17, 2000); *Bogdahn v. Hamilton Standard Space Sys. Int'l. Inc.*, 46 Conn. Supp. 153, 159 (Conn. Super. Ct. 1999).

Plaintiff has not sued any person other than Mobis. The Complaint is silent as to whose employment action Mobis could have aided and abetted. The only employment action at issue is Mobis's decision to retract Plaintiff's offer. To the extent Plaintiff claims Mobis had some influence on Staffmark, Plaintiff acknowledged during her deposition that she stopped seeking work through Staffmark. Ex. 1, Vega Dep., 56:12–57:22. Thus, for this reason as well there is no support for Plaintiff's "aiding and abetting" claim and Count Seven should be dismissed.

     **C.**     **Summary Judgment Should Be Granted On Plaintiff's Last Count (Count Eight) Because (1) PUMA Does Not Protect Illegal Marijuana Use And (2) Plaintiff's Failure To Obtain A GED Was, At A Minimum, One Reason For Mobis's Decision To Rescind Her Job Offer.**

     **1.**     **PUMA applies to use of medical marijuana, not use of illegal marijuana.**

PUMA provides in pertinent part that "[n]o employer may refuse to hire a person or may discharge, penalize or threaten an employee solely on the basis of such person's or employee's status as a qualifying patient or caregiver under sections 21a-408 to 21a-408m, inclusive." Conn. Gen. Stat. § 21a-408p. Based on this language, courts have held that obtaining a valid registration certificate is a statutory prerequisite to protection under PUMA. *Bulerin*, 2019 Conn. Super. LEXIS 517, at \*5.

Here, PUMA is inapplicable because Plaintiff cannot demonstrate she had a valid certificate at the time of her failed drug test. In fact, she acknowledged that she first sought to

obtain a medical marijuana certificate *after* the failed test.  Ex. 1, Vega Dep., 27:17–20, 37:1–8, 44:11–13.  There is no evidence suggesting that Mobis rescinded Plaintiff's employment offer based on her providing a medical marijuana certificate.  As described above, the evidence demonstrates that it withdrew her employment offer based on her failure to provide a GED.  *See* Section III.B.2. *supra*.  However, even if she was able to demonstrate that it withdrew the offer based on her failed drug test, that failure was due to her illegal use of marijuana, not any medically prescribed use.

**2.    Plaintiff obtaining certification for medical marijuana was not the sole reason for the decision to rescind her employment offer.**

"The plain language of § 21a-408p (b) (3) indicates that, to establish a violation thereof, employer must be shown to have discharged 'an employee *solely* on the basis of such person's or employee's status as a qualifying patient ....'" (Emphasis added.)  *Bartolotta v. Hum. Res. Agency of New Britain, Inc.*, 224 Conn. App. 248, 262–63 (2024).  "[A] prima facie case under PUMA requires the plaintiff to offer some evidence which, if credited, is sufficient to establish that the sole reason for his discharge was his status as a qualifying patient, and there was no other legitimate reason for his discharge, taking the plaintiff's evidence as true and interpreting it in the best light for the plaintiff."  *Eccleston*, 2025 Conn. Super. LEXIS 1586, at *8.

For the reasons set forth above, there is no genuine issue of fact that Mobis terminated Plaintiff's employment for any reason other than because of her failure to provide a GED.  *See* Section III.B.2. *supra*.  Even if the Court concludes that Mobis was partially motivated by her failed drug test, use of illegal drugs is not protected activity.  The only way for Plaintiff to prevail on this count is to show that the fact that she qualified as a user of medical marijuana was the sole reason for her termination.  In fact, it was not a reason at all.  Thus, summary judgment

20

should be granted on Count Eight.

## IV.    CONCLUSION

For the reasons stated herein, there is no genuine issue of material fact for a jury to decide, and accordingly, summary judgment should enter in favor of Mobis on Plaintiff's Complaint.

**DEFENDANT,**
**MOBIS PARTS AMERICA, LLC**

By: */s/ David R. Golder*
David R. Golder (ct27941)
David.Golder@jacksonlewis.com
Adam J. Lyke (ct30487)
Adam.Lyke@jacksonlewis.com
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

## CERTIFICATION OF SERVICE

I hereby certify that on December 5, 2025, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Courts electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Adam J. Lyke*
*Adam J. Lyke*