**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BETSY VEGA, | : | |
| | : | |
| Plaintiff, | : | Case No.:  3:24 cv 01478 (VAB) |
| | : | |
| vs. | : | |
| | : | |
| MOBIS PARTS AMERICA, LLC, | : | |
| | : | |
| Defendant. | : | February 3, 2026 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff asserts the following claims against the Defendant: (1) disability discrimination in violation of the ADA Amendments Act of 2008 (ADAAA) ; (2) failure to accommodate in violation  of ADAAA;  (3) retaliation in violation of the ADAAA; (4) disability discrimination in violation of the Connecticut Fair Employment Practices Act (CFEPA); (5) failure to accommodate in violation of CFEPA; (6) retaliation in violation of CFEPA; (7) aiding and abetting a discriminatory practice in violation of CFEPA; and (8) violation of C.G.S. §21a-408p(a) – PUMA.

**II.    FACTS**

**A.    Undisputed Facts**

Defendant has admitted to the following facts by way of its Answer to the Complaint.

Defendant made a contingent offer to Plaintiff to become an employee, subject to a drug screen and background check that included verification of the educational background reflected in Plaintiff's application materials. (Ans. ¶ 15).  Plaintiff underwent the drug test. (Ans. ¶ 17). The drug test came back positive for marijuana. (Ans. ¶ 18).

1

Victoria Andrews, Sr. HR Business Partner, requested that Plaintiff submit proof of her medical marijuana card to continue in the application process after she failed her drug test. (Ans. ¶ 26). Plaintiff submitted a purported medical marijuana card to Ms. Andrews on or around May 4, 2022. (Ans. ¶ 29).

Defendant's employees supervised plaintiff. (Ans. ¶ 46).

### B.     Plaintiff's Testimony

#### 1.     Background

Plaintiff got the job with the defendant through a staffing agency.  It was a "temp to hire" job. (Pl Dep 15-16, Ex.1) The job consisted of picking and packing car parts. (Pl Dep 17, Ex.1) The job started in October 2021. (Pl Dep 19, Ex.1) In January or February 2022, plaintiff switched to the third shift where she worked as a sorter. (Pl Dep 20, Ex.1)

#### 2.     Application for Regular Employee Status

Plaintiff applied for regular employment [non-temp] with the defendant while working the third shift. (Pl Dep 21-22, Ex.1)  Plaintiff submitted an application on or about February 17, 2022. (Pl Dep 20, Ex.1)  Defendant offered the job to the plaintiff. Plaintiff accepted the job on February 20, 2022. (Pl Dep 23-24, Ex.1)  The job as a "regular" employee was scheduled to start on March 14, 2022. (Pl Dep 25-26, Ex.1)  There was a drug screen that the plaintiff had to submit to before starting the job as a "regular" employee. (Pl Dep 25-26, Ex.1)

#### 3.     Drug Screen Results

Plaintiff submitted to the drug screen. The drug screen was positive for marijuana. (Pl Dep 27, Ex.1)  Plaintiff received the test results.  She continued to work after receiving the test results. (Pl Dep 27-28, Ex.1)

### 4.    Supervisor Jones' Remarks

Supervisor Jones told the plaintiff that the defendant did not allow marijuana and that she was going to get fired. (Pl Dep 28, Ex.1)

Q Do you recall anyone at Mobis

communicating to you that you could not continue

working at Mobis while the issue with the drug test was

being sorted out?

A Yes; Ed. Ed wanted me out.

Q What did Ed say to you?

A He said that they don't allow that kind of

stuff there, basically, and he's going to call the

agency to have the agency tell me not to go back. (Pl Dep 34, Ex.1)

### 5.    Notice of PTSD

Plaintiff told Supervisor Jones that she could obtain a license for medical marijuana and that she used marijuana for her post traumatic stress disorder (PTSD). (Pl Dep 28, Ex.1.). Defendant emailed the plaintiff informing her of the termination. (Pl Dep 28-29, Ex.1)

### 6.    Efforts to Get Job Back

Plaintiff made efforts to get her job back.  She was in communication with number of people in connection with her efforts to get her job back.  (Pl Dep 33, Ex.1).  Plaintiff communicated with Tobias Lopez about getting her job back. (Pl Dep 32-33, Ex.1; see also email thread attached hereto as Ex.2) Defendant employed Tobias Lopez as a Manager, PDC Operations. (Ex.2 at MPA 0088). Lopez told the plaintiff that she would get her job back. (Pl Dep 33, Ex.1)

3

### 7.    Got Job Back

Plaintiff got her job back.  Supervisor Jones was surprised to see plaintiff back to work.

Q Do you recall a discussion with Ed when you went back?

A Ooh. Yes.

Q What do you recall about that conversation?

A He looked at me puzzled; like, what are you doing here? You're not supposed to be here.

Q Okay. And what did you say to him?

A I said, "Hey, Ed, I'm back."

Q What did he say to you?

A He says, "What are you doing here?" I said, "Tobias got me back in here." And that was it. He walked off. (Pl Dep 36, Ex.1)

### 8.    Production of Medical Marijuana Card

On May 4, 2022, the plaintiff produced her medical marijuana card to the defendant. (Pl Dep 42-43, Ex.1)

### 9.    High School Diploma or GED

Defendant told the plaintiff that she needed a high school diploma. Defendant told the plaintiff that she could not work for the defendant without a high school diploma. (Pl Dep 45-46, Ex.1)  Plaintiff told the defendant that she could get her GED within six (6) months. (Pl Dep 46-

47, Ex.1)  Defendant told the plaintiff that she would be given 6 months to get the GED. (Pl Dep 46-47, Ex.1)

### C.    Ed Jones' Testimony

Defendant previously employed Ed Jones as the PDC Manager of the facility. (Jones Dep 5, Ex.3) He worked at the defendant's South Windsor, Connecticut facility. (Jones Dep 5, Ex.3). Jones had the authority to recommend the hiring of individuals. (Jones Dep 10, Ex.3)  Defendant would get Jones' input on hiring and firing decisions. (Jones Dep 11, Ex.3)  Jones was in charge of running the South Windsor facility. (Jones Dep 11, Ex.3)

Defendant accepted a GED in lieu of a high school diploma. (Jones Dep 16-17, Ex.3)

Plaintiff notified Jones of her positive for marijuana drug screen result. (Jones Dep 22, Ex.3)  Plaintiff told Jones that she used marijuana for medical reasons. (Jones Dep 22-23, Ex.3) Corporate also notified Jones of plaintiff's positive drug screen results. (Jones Dep 22, Ex.3) Defendant's human resources department told Jones that plaintiff could not continue to work as a "temp" because of the positive drug screen for marijuana. (Jones Dep 27-28, Ex.3)

Jones understood that plaintiff was performing her job well.  She would not have been hired as a "regular" employee if she had not been performing well.   (Jones Dep 31, Ex.3)

Defendant's employees supervised the plaintiff. (Jones Dep 31, Ex.3) Plaintiff was not a volunteer. (Jones Dep 32, Ex.3)  Plaintiff was paid for the work she did. (Jones Dep 32, Ex.3)

Jones did not make the decision to rescind plaintiff's job offer to be a "regular" employee.  "Corporate" HR made the decision.  All Jones did was to deliver the news to the plaintiff. (Jones Dep 28-29, Ex.3)

5

### E.    Michael Walker's Testimony

Defendant employed Michael Walker. (Walker Dep 5, Ex.4) Walker's position was DC Supervisor. (Walker Dep 6, Ex.4) He worked at the South Windsor facility. (Walker Dep 6, Ex.4)  Walker supervised both "temps" and regular Mobis employees. (Walker Dep 23, Ex.4) There was no difference in how he supervised the "temps" and the "regular" employees. (Walker Dep 23, Ex.4) Walker supervised the plaintiff at some point. (Walker Dep 12-13, Ex.4)

Walker was aware of several associates who had trouble procuring proof of a high school diploma or "just having one in general". (Walker Dep 18-19, Ex.4)  Walker testified that he believed the defendant provided time for an associate to acquire the high school diploma. (Walker Dep 18-19, Ex.4)  Walker vaguely remembers the defendant providing 6 months to either present the diploma or to a GED.  (Walker Dep 19-20, Ex.4)

Q And you described a difference between

just, you know, producing a GED versus working to

get a GED.

A Yeah.

Q What did you mean by that?

A I vaguely -- like I said, from what I

remember, I believe that they -- the reasoning

that they would give a duration to produce a GED

would be if someone was actively going to school

to acquire it, that they would allow that as long

as it was completed, obviously, under a certain

timeframe or to produce it. I mean, to produce

it, you would need time. But I just -- I feel like that is something they allowed just through the talks that I had. But like I said, everything is just from what I can recall. (Walker Dep 30, Ex.4)

### F.    Liliana Marquez's Testimony

Defendant employs Marquez as a human resources business partner in the recruiting department. (Marquez Dep 5, Ex.5) Marquez works at the defendant's Fountain Valley, California headquarters.

Marquez is involved with the "conversion process".  The "conversion process" is what the defendant calls the transitioning of a "temp" employee to a regular employee. (Marquez Dep 6, Ex.5)  Back in 2022, the defendant required a regular employee to have a high school diploma or a GED. (Marquez Dep 8, Ex.5)  Defendant used a third party to verify the education qualification. (Marquez Dep 9, Ex.5)  Defendant's policy was to afford an individual up to six (6) months to produce the high school diploma or GED. (Marquez Dep 9, Ex.5)

Q All right. Did Mobis, in 2022, have any policy with regards to giving the individual a period of time in which to produce the high school diploma or GED?

A Generally we would offer up to six months' contingency.

Q What do you mean by "six months' contingency"?

A So, generally if a candidate was

selected for conversion and they did not have their high school diploma or GED, we would include in their offer letter a contingency stating that they must obtain their GED within the first six months of employment. (Marquez Dep 9-10, Ex.5)

Marquez was unsure if the six (6) month policy was reduced to writing.  But, she was aware that there was a six (6) month policy. (Marquez Dep 26, Ex.5)  Human Resources Director Sherry Thomas notified the recruiting team (including Marquez) of the six (6) month policy.

Q She was. Tell me what you know about the six-month contingency plan.

A From my knowledge and what I can remember is that we would offer a six-month contingency for employees that were selected for conversion that did not have their GED or their diploma. And then if they were unable to retrieve or receive it within those six months, they could let us know and then we could revisit a potential extension. (Marquez Dep 26, Ex.5)

The six (6) month policy included a potential extension.  Should the selected employee for conversion not be able to produce the diploma or obtain the GED within six (6) months could potentially have the deadline to do so extended.

According to Marquez, the plaintiff did not get the "regular" employee position because the company was unable to verify her education. (Marquez Dep 2, Ex.5) Marquez believed that

the plaintiff was working as a "temp" when the defendant rejected her for the "regular" employee job. (Marquez Dep 15, Ex.5)  Marquez testified that the defendant gave the plaintiff some time ("it might have been a month or so") to produce a high school diploma or GED. (Marquez Dep 15, Ex.5)

Marquez was aware that the plaintiff was using medical marijuana. Marquez was notified that the plaintiff provided a medical marijuana card to the defendant. (Marquez Dep 21, Ex.5) Marquez was notified that the plaintiff was using medical marijuana for medical reasons. (Marquez Dep 21, Ex.5)  Marquez was on notice that the plaintiff's drug screen came back positive for marijuana. (Marquez Dep 27, Ex.5)

Marquez testified that the Ed Jones made the decision not to hire the plaintiff as a "regular" employee. (Marquez Dep 28, Ex.5).  Marquez denied being involved in the decision to not hire the plaintiff as a "regular" employee. (Marquez Dep 28-29, Ex.5)

## III.    LAW AND ARGUMENT

### A.    Summary Judgment Standard

The standard for granting summary judgment mirrors the standard for a directed verdict which is that the trial judge must direct a verdict, if, under governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). A directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the non-movant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. The question is always whether after "drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in his favor, there is sufficient evidence to permit a rational juror to find in his favor." *Sir Speedy, Inc. v. L&P Graphics, Inc*., 957 F.2d 1033, 1039 (2d Cir. 1992). Stated another way, if the case

had been tried to a jury on the evidence presented in plaintiff's objection to the motion for summary judgment and the jury returns a plaintiff's verdict, would it have been upheld?

## B.    Disability Discrimination Claim

The ADA and CFEPA prohibit employers from discriminating against disabled employees. To establish a *prima facie* case of disability discrimination plaintiff must prove: (1) she is disabled within the meaning of the law; (2) she was otherwise qualified to perform the essential functions of his job or the job desired, with or without reasonable accommodation; and (3) plaintiff suffered adverse employment action because of her disability. *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 418-419 (2008); citing *Tobin v. Liberty Mutual Ins. Co.*, 433 F.3d 100, 104 (1st Cir.2005); *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir.1998). The law requires employers to provide reasonable accommodations to their disabled employees. *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 414 A.2d 925, (2008); *McMillan v. City of New York*, 711 F.3d 120, 128 (2d Cir.2013)

### 1.    Disability

Plaintiff has been diagnosed with post-traumatic stress disorder. (Pl Dep 67, Ex.1). Plaintiff notified Supervisor Jones that she was using marijuana for the PTSD. (Pl Dep 28, Ex.1.).

### a.    ADA Disability

The ADA, as amended by the ADA Amendment Act of 2008, defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)

"[T]he primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and ... the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis[.]" ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553, § 2(b)(5). Congress has made clear that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [the ADA]." Id. § 4 (to be codified at 42 U.S.C. § 12102(4)(A) (effective Jan. 1, 2009)).

Post traumatic stress disorder easily satisfies the definition of a disability under the ADAAA.  See 29 C.F.R. § 1630.2(j)(3)(iii) ("[I]t should easily be concluded that ...post-traumatic stress disorder ... substantially limit[s] brain function.")

### b.    CFEPA Mental Disability

The CFEPA defines mental disability as an individual who has a record of, or is regarded as having one or more mental disorders, as defined in the most recent edition of the American Psychiatric Association's "Diagnostic and Statistical Manual of Mental Disorders. C.G.S. §46a-51(20).

The Diagnostic and Statistical Manual of Mental Disorders 5th Edition recognizes and defines PTSD. https://www.ncbi.nlm.nih.gov/books/NBK207191/box/part1_ch3.box16/ This court can take judicial notice of DSM-5's recognition and definitions of the disorders. See e.g., *United States v. Long*, 562 F.3d 325, 334 n. 22 (5th Cir.2009)(taking judicial notice of DSM-IV's criteria for schizotypal personality disorder while reviewing the district court's decision not to provide a jury instruction for an insanity defense).

For purposes of summary judgment, plaintiff has established a mental disability under CFEPA.

11

### 2.    Notice of Disability

Plaintiff testified that she told Supervisor Jones that she was using medical marijuana for PTSD.  Thus, defendant was on notice of the disability.

### 3.    Qualified for the Job

It does not appear that the defendant has moved for summary judgment on the "qualified" issue.  Nevertheless, plaintiff briefs the issue.

The term "*qualified"* with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position. 42 U.S.C. § 12111(8), 29 CFR 1630.2(m).

Reasonable accommodations can include: job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, making existing facilities used by employees readily accessible to and usable by individuals with disabilities, leave of absence, and other similar accommodations for individuals with disabilities. *Sivio v. Village Care Max*, 436 F.Supp.3d 778, 790-71 (S.D.N.Y.2020), quoting 42 U.S.C. § 12111(9); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 405-06 (2002); Curry v. *Allan S. Goodman, Inc*., 286 Conn. 390, 415 (2008); *Thomson v. Department of Social Services*, 176 Conn.App. 122 (2017).

Plaintiff possessed the basic job skills to do the job.  She was performing the job well as a "temp" employee.  Defendant was putting the plaintiff through its "conversion" process to

12

become a "regular" employee.  It did so because it had recognized that plaintiff had been performing the job well as a "temp".

Defendant cannot defeat the "qualified" claim but arguing that the plaintiff lacked a high school diploma or GED.  Defendant had a six (6) month policy with potential extension to allow an employee in the "conversion" process to obtain her GED or produce the high school diploma.

### 4.    Adverse Action

There are two adverse actions in this case.  Defendant terminated plaintiff's employment in March 2022.   Defendant terminated plaintiff's employment for the second time on July 6, 2022.

Defendant has not moved for summary judgment on the issue of whether plaintiff was an employee of the defendant.  Therefore, for purposes of summary judgment, the plaintiff was an employee.

### 5.    Adverse Employment Action Occurred Under Circumstances Giving Rise to an Inference of Discriminatory Intent

#### a.    *McDonnell Douglas*

*McDonnell Douglas* consists of three (3) stages: stage one – plaintiff's prima facie case; stage two – defendant's burden of production of a legitimate business reason for the adverse action; stage three – "a plaintiff may, but need not, show at the third stage of the *McDonnell Douglas* burden-shifting test that the employer's stated justification for its adverse action was nothing but a pretext for discrimination; a plaintiff may alternatively satisfy this burden by adducing evidence that, even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action." *Bart v. Golub Corporation*, 96 F.4th 566, 578 (2d Cir. 2024).

There are various ways in which to prove a prima facie case of discrimination. See e.g., *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37–38 (2d Cir.1994) (noting the many types of circumstances that could create a permissible inference of discriminatory intent).

Timing evidence is one way to prove an inference of discriminatory intent. See e.g., *Smith v. K & F Indus., Inc.*, 190 F.Supp.2d 643, 649 (S.D.N.Y.2002) (finding inference of discrimination where termination occurred one month subsequent to disclosure of pregnancy) Plaintiff notified Supervisor Jones that she was using medical marijuana for her PTSD. Shortly thereafter, plaintiff was out of the job. Plaintiff then engaged in efforts to be re-hired. On April 25, 2022, defendant's Sr. HR Business Partner Victoria Andrews sends an email stating: "[r]egarding Betsy Vega, I have confirmed that she is still eligible to be hired based on a few factors according to CT laws." (See 04/21/22 email attached hereto as Ex.6) A reasonable inference can be drawn that the "few factors according to CT laws" included the CFEPA.

The burden at the prima facie stage is de minimis. De minimis means minimal. Plaintiff has come forward with competent evidence of circumstances that would be sufficient to permit a finder of fact to infer a discriminatory motive.

### b.    Stage Two – Defendant's Burden of Production

With the prima facie case established, it is incumbent upon the defendant to come forward and articulate a legitimate, non-discriminatory reason for its employment decision. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 255-56 (1981) The defendant must clearly set forth, through the introduction of admissible evidence, the legitimate, non-discriminatory reason for the termination. The explanation must be legally sufficient to justify a judgment for the defendant." *Burdine*, 450 U.S. at 255 (emphasis added). That offered reason must "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair

opportunity to demonstrate pretext." *Id.* at 255–56.  While the defendant's burden ". . . is only one of production and not persuasion, it is elementary that the evidence produced must be clear, reasonably specific, and legally sufficient . . . . " *Tye v. Board of Education*, 811 F.2d 315, 318 (6th Cir.); cert. denied, 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987), overruling on other grounds by *Kline v. Tennessee Valley Authority*, 128 F.3d 337 (6th Cir.1997). See also, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510 n.3 (1993) (stating that if an employer fails to show a nondiscriminatory reason at trial the plaintiff will win unless his or her prima facie case does not convince the fact finder to infer a discriminatory motive).

Defendant claims that plaintiff's failure to produce a GED or high school diploma was the reason for the July 6, 2022 adverse action.

### c.    Pretext

Assuming arguendo that defendant has satisfied its burden of production, the burden then shifts back to the plaintiff to show that the employer's proffered reason is pretext to disguise unlawful discrimination.

"[T]he plaintiff is not required to show that the employer's proffered reasons . . . played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.'" *Beck v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 123 (2d Cir. 2004).  Accordingly, the plaintiff defeats summary judgment when her prima facie case, coupled with evidence that the employer's justification is false or erroneous, supports the inference that the adverse employment action was discriminatory. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

"A plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for

15

its action that a reasonable [fact finder] could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." (Internal quotation marks omitted.) *Stubbs v. ICare Management, LLC*, 198 Conn. App. 511, 523, 233 A.3d 1170 (2020).

Supervisor Jones testified that he had nothing to do with making the decision to terminate/fail to hire the plaintiff as a "regular" employee.  Supervisor Jones claims that corporate HR made the decision. Marquez testified that Supervisor Jones made the decision to terminate/fail to hire the plaintiff as a "regular" employee. Marquez denied being involved in the decision to not hire the plaintiff as a "regular" employee.   The conflicting testimony as to who on behalf of the defendant actually made the decision to terminate is evidence of pretext.  See e.g., *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 901-903 (5th Cir. 2012) (employer "misidentified the relevant decisionmaker, and by the time the likely decisionmaker was identified, that person could no longer remember making the decisions to dismiss" the plaintiff and a co-employee; persons identified as being the decision makers later "testified that they did not make the dismissal decisions").

Defendant's policy was to provide six (6) months with a potential extension for an employee to provide proof of the high school diploma or to obtain a GED. Defendant's policy was not followed in this case.  Defendant only gave the plaintiff a month or so to produce the high school diploma or obtain a GED.  Deviations from company policy and procedures is evidence of pretext. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, F.3d 450, 454-55 (5th Cir.2013)(noting that relevant evidence for establishing prima facie retaliation case may include an employer's departure from typical policies and procedures); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 313-14 (2d Cir.1997(an inference of pretext may arise where an employer's

deviation from its procedures results in the challenged employment decision).  Defendant's deviation from company policy is evidence of pretext.

Summary judgment on the ADAAA and CFEPA claims should be denied.

### C.        Failure to Accommodate Claim

A plaintiff asserting a claim for discrimination based on a failure to accommodate need only show that "(1) he is disabled within the meaning of the ADA [CFEPA]; (2) his employer is a covered entity; (3) he could perform the essential functions of his job with an accommodation; and (4) the defendants refused to provide such an accommodation despite being on notice." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96-97 (2d Cir. 2009)). The legal elements of failure to accommodate claim are the same under the ADA and CFEPA.

The failure to accommodate claim does not require proof of discriminatory intent. *Nazario v. Promed Pers. Servs. NY Inc.*, No. 15-CV-06989 (LGS), 2017 WL 2664202, at n.1 (S.D.N.Y. June 19, 2017) ("The failure to accommodate provision in § 12112(b)(5)(A) deals with state of mind implicitly by excusing the adoption of accommodations that are unreasonable or would cause undue hardship."); accord *Peebles v. Potter*, 354 F.3d 761,766 (8th Cir. 2004) ("a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive"); *Punt v. Kelly Servs.*, 862 F.3d 1040, 1047-48 (10th Cir. 2017) (failure to accommodate claims do not require evidence of discriminatory intent); *Freadman v. Metropolitan Property & Casualty Ins. Co.*, 484 F.3d 91, 102 (1st Cir.2007) (citing elements under ADA); see also *Rodal v. Anesthesia Group of Onondaga, P. C.*, 369 F.3d 113, 118 (2d Cir.2004) (same); *Ezikovich v. Commission on Human Rights & Opportunities*, supra, 57 Conn.App. at 774, 750 A.2d 494 (same).

At the outset, plaintiff acknowledges *Eccleston v. City of Waterbury*, No. 3:19-cv-1614

17

(SRU), 2021 U.S. Dist. LEXIS 52835, at *17-18 (D. Conn. Mar. 22, 2021) ("Because medical marijuana does not fit within the supervised-use exception and remains illegal under federal law, an individual who uses medical marijuana cannot state a prima facie case under the ADA for discrimination on the basis of medical marijuana use."). The failure to accommodate claim is viable under CFEPA only.

Defendant claims that it had no notice of plaintiff's PTSD. But plaintiff testified that she told Supervisor Jones of her PTSD. Plaintiff informed Supervisor Jones of her PTSD in the context of explaining why she uses medical marijuana.

The accommodation requested was to be allowed to work while taking medical marijuana to treat a disability. The Plaintiff is not required to use magical words when requesting a reasonable accommodation. All that is required is for the defendant to be sufficiently put on notice that the plaintiff is requesting a reasonable accommodation for a disability. A reasonable accommodation need not be requested in specific or formalistic terms. There is no requirement that "the plaintiff ... speak any magic words before [she] is subject to [the antidiscrimination statute's] protections. The employee need not mention the [antidiscrimination statute] or even the term accommodation." (Internal quotation marks omitted.) *Herrick v. Southington Veterinary Hospital, LLC*, 2023 WL 3840080 at 3 (Conn.Super. May 31, 2023)(Knox, J.) quoting *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997 (D. Or. 1998).

Defendant failed to accommodate the plaintiff as it terminated the plaintiff. The termination effectively denied the accommodation.

Plaintiff's requested accommodation was reasonable on its face. Plaintiff's burden is not heavy at the prima face stage: "It is enough for the plaintiff to suggest the existence of a

18

plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."

*Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137–38 (2d Cir.1995). On this record, plaintiff

has easily met his burden.

If a plaintiff suggests plausible accommodations, the burden of proof shifts to the

defendant to demonstrate that such accommodations would present undue hardships and would

therefore be unreasonable. See *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131 (2d Cir.1995)

An "undue hardship" is "an action requiring significant difficulty or expense." 42 U.S.C. §

12111(10)(A).

The reasonable accommodation determination "is necessarily fact-specific." *Wernick v.*

*Fed. Reserve Bank of N. Y.*, 91 F.3d 379, 385 (2d Cir. 1996). On this evidentiary record,

defendant has failed to establish that the accommodation would have imposed undue hardship.

In addition, both parties have a duty to assist in the search for appropriate reasonable

accommodation and to act in good faith. *Mengine v. Runyon*, 114 F.3d 415, 420 (3rd Cir.1997);

*Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir.1996) (The "employee's

initial request for an accommodation ... triggers the employer's obligation to participate in the

interactive process ...."), *cert. denied*, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996).[1]

Plaintiff has established a prima facie case of failure to accommodate.  Summary

judgment should be denied as to the CFEPA failure to accommodate claim.

---

[1] The employer's failure to accommodate and failure to engage in the interactive process can tend to prove discrimination and thus is additional evidence in support of the disability discrimination claim. *Kovachich v. Department of Mental Health and Addiction Services*, 344 Conn. 777, 803-04 (2022)("Additionally, an employer's failure to participate in the interactive process in good faith 'does not give rise to per se liability' but 'may be sufficient grounds for denying a defendant's motion for summary judgment, because it is, at least, some evidence of discrimination.'", citing *Curry v. Allan S. Goodman, Inc.*, supra, at 418, 944 A.2d 925; see *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) ("a failure to engage in a good faith interactive process is not an independent violation of the ADA" but "can be introduced as evidence tending to show disability discrimination").

19

### D.    Retaliation Claim Under CFEPA and ADA

The four elements of a prima facie case of retaliation under the ADA and CFEPA are: i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir.2002).

Plaintiff requested a reasonable accommodation, thus engaged in protected activity.

Defendant was on notice of plaintiff's accommodation request.

An adverse action is "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination," and "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)( "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."); *Billings v. Town of Grafton*, 515 F.3d 39, 54 (1st Cir.2008)("[C]onduct need not relate to the terms or conditions of employment to give rise to a retaliation claim.")

It is undisputed that defendant terminated plaintiff's employment.  Termination is a materially adverse action.

At the prima facie stage, a plaintiff can rely solely on temporal proximity to establish the requisite casual connection between his protected activity and the materially adverse action. Blanco v. Brogan, 620 F. Supp. 2d 546, 554–55 (S.D.N.Y. 2009) (citing *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir. 1986), and *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d

111, 115 (2d Cir. 1987)); *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554-555 (2d Cir.2001); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing complaint with state human rights office provided prima facie evidence of a causal connection between protected activity and retaliation.).

There is close proximity in time between plaintiff's protected activity and the adverse action. Therefore, a prima facie case of retaliation has been established.

The timing evidence combined with the evidence of pretext [as set forth in support of the discrimination claims] creates an issue of retaliatory intent for the jury to decide.

**E.    Plaintiff's Good Faith Belief That He Was Disabled**

Even if Plaintiff did not have a disability within the meaning of the CFEPA and/or the ADA, she can still prevail on the retaliation claim. All plaintiff needs to establish is that he had good faith that she was disabled or perceived as disabled at the time she requested the accommodation. A plaintiff's failure to establish that he was disabled does not prevent him from recovering if he can establish that his employer terminated him because he engaged in activity protected under the ADA. *Shellenberger v. Summit Bancorp.*, 318 F.3d 183, 188 (3d. Cir.2003)( At the outset of our discussion, we note that Shellenberger's failure to establish that she was disabled does not prevent her from recovering if she can establish that her employer terminated her because she engaged in activity protected under the ADA. In *Krouse*, we stated: "We hold that a person's status as a 'qualified individual with a disability' [under the ADA] is not relevant in assessing the person's claim for retaliation under the ADA." *Krouse*, 126 F.3d at 498.) In other

21

words, the absence of a disability does not translate into an absence of protection under the CFEPA. See e.g., *Selenke v. Med. Imaging of Colo*., 248 F.3d 1249, 1264 (10th Cir.2001) ("to prosecute an ADA retaliation claim for requesting reasonable accommodations, a plaintiff need not show that she suffers from an actual disability.... A reasonable, good faith belief that the statute has been violated suffices."); *Agosto v. Premier Maintenance, Inc*., 185 Conn.App. 559, 587 (2018)( An employee's complaint may qualify as protected activity ... so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.")

### F.    PUMA Claim

Under Connecticut law, employees and job applicants who legally use medical marijuana generally cannot be subject to employment discrimination on that basis.  Section 21a-408p of the Connecticut General Statutes, which is part of the Palliative Use of Marijuana Act (or "PUMA"), states: "No employer may refuse to hire a person or may discharge, penalize[,] or threaten an employee solely on the basis of such person's or employee's status as a qualifying patient or primary caregiver" under the PUMA.

Defendant claims that the decision to terminate plaintiff's employment had nothing to do with the fact that she had a medical  marijuana card.  The evidence proves otherwise.

One, Supervisor Jones told the plaintiff that defendant does not allow marijuana and that she was going to get fired. (Pl Dep 28, Ex.1) Supervisor Jones wanted plaintiff out of the job.

Q Do you recall anyone at Mobis
communicating to you that you could not continue
working at Mobis while the issue with the drug test was
being sorted out?

22

A Yes; Ed. Ed wanted me out.

Q What did Ed say to you?

A He said that they don't allow that kind of stuff there, basically, and he's going to call the agency to have the agency tell me not to go back. (Pl Dep 34, Ex.1)

Two, Supervisor Jones was surprised to see plaintiff back working. "What are you doing here?" was Supervisor Jones' comment to the plaintiff upon seeing her back at work.  After making the comment, Supervisor Jones walked away without additional comment.  There was no "welcome back" from Supervisor Jones.

Three, defendant had a six (6) month policy for an employee in the conversion process to produced the high school diploma or acquire the GED.  The policy also contained a potential extension of the six (6) month deadline.  It is undisputed that the defendant failed to provide the plaintiff the six months in which to acquire the GED.  The deviation from the policy is evidence of pretext. Further, if one credits Marquez's testimony, it was Supervisor Jones who made the decision to terminate plaintiff on July 6, 2022.  Supervisor Jones was on notice of plaintiff's medical marijuana card.  He was the one that took the position that someone like plaintiff who used marijuana could not work for the job.  He was the one unhappy to see the plaintiff back working. Supervisor Jones searched for some other excuse to get rid the plaintiff.  He found it in the form of a lack of a present GED. Supervisor Jones was aware of the policy that provided up to six (6) months for an employee going through the "conversion".  He also knew that the policy was unwritten.  Thus, Supervisor Jones banked on the plaintiff being unaware of the policy when he went ahead and terminated the plaintiff for not being able to produce the GED by July 5, 2022.

Summary judgment should be denied on the PUMA claim.

### G.    CFEPA Aiding and Abetting Claim

Section 46a-60 (b) (5) provides: "It shall be a discriminatory practice in violation of this [section for] any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so."

Defendant argues that it cannot aid and abet discriminatory or retaliatory conduct under § 46a-60 (b)(5), while at the same time being the perpetrator of the discriminatory or retaliatory conduct under General Statutes § 46a-60 (b) (1) and §46a-60 (b) (4).  Defendant's argument is premised on an acknowledgment that the defendant employed the plaintiff.

Plaintiff asserted the Section 46a-60 (b) (5) claim, in the alternative, anticipating an argument by the defendant that it did not employ the plaintiff.  Defendant made no such argument in its motion for summary judgment.

### IV.    CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment should be denied.

/s/ James Sabatini_____
James V. Sabatini   (CT 19899)
Sabatini and Associates, LLC
One Market Square
Newington, CT  06111
Tel. No.:  860-667-0839
Fax No.:  860-667-0867
e-mail:  jsabatini@sabatinilaw.com

ATTORNEY FOR PLAINTIFF

24

## <u>ELECTRONIC CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


<u>/s/ James V. Sabatini</u>
James V. Sabatini