**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

<table>
<tr><td>

BETSY VEGA,
    *Plaintiff*,

v.

MOBIS PARTS AMERICA, LLC,
    *Defendant.*

</td><td>

No. 3:24-cv-1478 (VAB)

</td></tr>
</table>

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Betsy Vega has sued Mobis Parts America, LLC ("Mobis") alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), the Connecticut Fair Employment Practices Act ("CFEPA"), and the Palliative Use of Marijuana Act ("PUMA"). Compl., ECF No. 1.

Mobis has moved for summary judgment. Def. Mobis Parts Am., LLC's Mot. for Summ. J., ECF No. 21 ("MSJ").

For the following reasons, Mobis's motion for summary judgment is **GRANTED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

    A.  **Factual Background**

On October 18, 2021, Staffmark, a temporary staffing agency, assigned Ms. Vega to work at Mobis as a material processor. Pl.'s Local Rule 56(a)2 Statement of Facts in Opp'n to Summ. J. ¶ 1, ECF No. 32 ("Pl. SOF").

On February 17, 2022, Ms. Vega submitted an application for non-temporary employment with Mobis. *Id.* ¶ 2. On the application, she marked "General Development Test," rather than stating she had obtained a high school degree. *Id.* Ms. Vega, however, knowingly lied

on the application and had never taken a General Development Test or earned a General Education Development certificate ("GED"). *Id.* ¶ 3.

On the same day, Ms. Vega received a conditional offer of employment to start work on March 14, 2022. *Id.* ¶¶ 3–4. The offer was contingent on the results of a background check and drug screening. *Id.* ¶ 4.

Ms. Vega's drug test was positive for marijuana. *Id.* ¶ 5.

On March 16, 2022, Ms. Vega called the facility manager Ed Jones to explain that her drug test was positive but that she had a medical marijuana card, prescribed for sleeping problems. *Id.* ¶ 6. The positive drug test, however, was based on marijuana Ms. Vega had illegally obtained. *Id.*

Ms. Vega continued to work at Mobis through Staffmark while Mobis personnel determined next steps. *Id.* ¶ 8.

On April 21, 2022, Mobis HR personnel Victoria Andrews called and sent Ms. Vega an e-mail to inform her that she had to provide photos of her medical marijuana card on or before April 27 to continue with the hiring process. *Id.* ¶ 9.

On April 26, 2022, Ms. Vega told Ms. Andrews that she had an appointment on April 28, presumably to obtain a medical marijuana card. *Id.* ¶ 10.

On May 4, 2022, Ms. Vega provided Ms. Andrews with a medical marijuana registration certification, which she had obtained on May 2. *Id.* ¶ 11. This was the first time she had obtained a medical marijuana certificate. *Id.* Ms. Vega received the card based on her Post-Traumatic Stress Disorder ("PTSD"). *Id.* ¶ 13. Ms. Vega alleges that she told Mr. Jones about her PTSD, while Mobis employees deny that they knew about her PTSD. *Id.* ¶¶ 14–15.

On May 5, 2022, Ms. Andrews told Ms. Vega that she would work on a new offer letter. *Id.* ¶ 12. While preparing the new offer letter, Ms. Andrews discovered that Ms. Vega's background check had failed to verify that she graduated from high school. *Id.* ¶ 16.

On May 11, 2022, Ms. Andrews called and sent Ms. Vega an e-mail to inform her that she needed to provide proof of a high school diploma or GED. *Id.* ¶ 16.

On May 20, 2022, Mr. Jones told Ms. Andrew's replacement Lilana Marquez that Ms. Vega had a GED but that she could not find it and could re-take the test. *Id.* ¶ 18.

Ms. Marquez told Ms. Vega over phone and e-mail that she had a tentative start date of July 5, 2022, contingent on receipt of her GED Certificate or medical marijuana documentation. *Id.* ¶ 19. Ms. Vega responded that she had misplaced her GED but was willing to take another course to get it. *Id.* Ms. Vega, however, lied about misplacing her GED, as she never had one. *Id.* ¶ 20.

Ms. Vega failed to submit documentation of her GED by July 5, 2022. *Id.* ¶ 22.

On July 5, 2022, Ms. Marquez sent Ms. Vega an e-mail to rescind the offer letter. *Id.* ¶ 23; Def. Ex. J. Ms. Marquez also called Ms. Vega. Pl. SOF ¶ 23. Ms. Vega did not pursue any other temp opportunities through Staffmark. *Id.*

### B. Procedural History

On September 16, 2024, Ms. Vega filed her Complaint. Compl.

On December 15, 2025, Mobis filed this motion for summary judgment and accompanying memorandum. MSJ; MSJ Mem.

On February 3, 2026, Ms. Vega filed her opposition memorandum. Pl.'s Obj. to Def.'s Mot. for Summ. J., ECF No. 26 ("Opp'n").

On April 3, 2026, Mobis filed a reply. Reply.

3

II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated

4

speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III.    DISCUSSION

Mobis moves for summary judgment on all of Ms. Vega's claims.

The Court first addresses her ADA claims, and then addresses her claims under Connecticut state law, to the extent necessary.

### A.  The American with Disabilities Act Claims

The ADA prohibits employers from discriminating on the basis of disability. 42 U.S.C. § 12112(a). Disability discrimination claims under the ADA are subject to the burden-shifting

framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Id.*

> To establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability."

*Id.* (quoting *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir. 2001)).

An employer may also discriminate in violation of the ADA by failing to provide reasonable accommodations for a disability. 42 U.S.C. § 12112(b)(5)(A); *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). To establish a *prima facie* failure to accommodate claim, a plaintiff must show: (1) the plaintiff is a person with a disability within the meaning of the ADA, (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue, and (4) the employer has refused to make such accommodations. *Id.* at 97.

In addition, the ADA protects an employee from retaliation for opposing an unlawful discriminatory activity. 42 U.S.C. § 12203(a). To establish a *prima facie* retaliation claim, a plaintiff must show that: (1) the plaintiff engaged in an activity protected under the statute, (2) the employer was aware of this activity, (3) the employer took an adverse employment action against the plaintiff, and (4) a causal connection exists between the alleged adverse action and the protected activity. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

The plaintiff's burden to establish a *prima facie* case is not demanding, nor is the defendant's burden when offering a legitimate non-discriminatory reason for its action. *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). "The ultimate burden then rests on the plaintiff to persuade the factfinder that the employer's proffered explanation is merely a pretext for its intentional discrimination." *Id.*; *see also McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) ("In discrimination claims based both on adverse employment actions and on failures to accommodate, the plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment." (alterations in original) (internal quotation marks omitted)).

Mobis argues that Ms. Vega's disability claims are premised solely on her medical marijuana use, as she never told any Mobis employee that she had PTSD that required the use of medical marijuana and she has failed to provide evidence of her PTSD diagnosis. MTD Mem. at 9–10. And because the ADA does not protect medical marijuana use, Mobis argues that Ms. Vega's claims under the ADA should be dismissed. *Id.* at 7–9. In addition, Mobis argues that the disability discrimination claims should be dismissed because Mobis had a legitimate non-discriminatory reason to rescind Ms. Vega's employment offer: her failure to obtain a GED. *Id.* at 13–15.

As to her reasonable accommodation claims, Mobis argues that Ms. Vega never requested a reasonable accommodation, and even if Ms. Vega had requested an accommodation to use medical marijuana, there is no record evidence that Mobis denied this request. *Id.* at 15–16. As to her retaliation claims, Mobis argues that Ms. Vega has failed to show that she engaged

7

in a protected activity, that this protective activity was connected to her termination, and that her disability was the reason to rescind her offer. *Id.* at 16–18.

Ms. Vega argues that there is a genuine issue of fact in dispute to support her disability claims. She argues that her PTSD qualifies as a disability under the ADA and that she told Mr. Jones that she was using marijuana for PTSD, such that Mobis had notice of her disability. Opp'n at 10–12. She argues that Mobis's alleged reason for rescinding her employment offer is pretextual because Mobis employees have conflicting testimony about who made the decision and because Mobis deviated from its policy to give employees six months to obtain a GED. *Id.* at 15–17. As to her reasonable accommodation claim, she argues that there is a genuine issue of fact in dispute to support that she told Mobis about her PTSD and requested to continue working while using medical marijuana, which is a reasonable request, at least at this stage. *Id.* at 18–19. As to her retaliation claim, she argues that her reasonable accommodation request constituted protected activity and the temporal proximity between her request and termination are sufficient to establish retaliation, at least at this stage. *Id.* at 19–21.

The Court disagrees.

The ADA defines disability as either (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

On this record, there is not a genuine issue of material fact as to whether Ms. Vega is disabled under the ADA. In support of her alleged disability, PTSD, Ms. Vega offers her own testimony and her medical marijuana card, which does not specify any diagnosis. *See* Dep. of Betsy Vega at 67:15–17 ("I can't sleep at night, so I mean, I go through stuff. So I just figured

8

PTSD is the right thing and that's what I got diagnosed with[.]"); Def. Ex. G (Medical Marijuana Program Certificate).

But, to be disabled under the ADA, Ms. Vega must show that the impairment "substantially limits one or more major life activities" or a record of such impairment. 42 U.S.C. § 12102(1); *see Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) ("Not every impairment is a 'disability' within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial."); *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 169 (2d Cir. 2024) ("To state a claim under the ADA based on a record of a disability, a plaintiff must allege that he has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." (internal quotation marks omitted)); *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 43–44 (2d Cir. 2015) ("[M]edical evidence as to the extent of an individual's impairment is not always required to survive summary judgment. . .  [N]on-medical evidence that conveys, in detail, the substantially limiting nature of an impairment may be sufficient to survive summary judgment.").

While Ms. Vega's testimony about her alleged sleep deprivation may be insufficient detail to show the impairment "substantially limits one or more major life activities," she, nonetheless, has failed to raise a triable issue as to whether Mobis knew she had an impairment. *See Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012) ("Although both parties thought that Hilton needed to demonstrate that the defendants regarded him as being substantially limited in a major life activity, it is clear that he was only required to raise a genuine issue of material fact about whether Dr. Wright and/or DOCS regarded him as having a mental or physical impairment. Hilton was not required to present evidence of how or to what degree they believed

9

the impairment affected him."); *see also* ADA Amendments of 2008 § 4(a), paragraph 3 ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

Ms. Vega testified that she told Mr. Jones that she "was going to get a license." But she concedes that she did not tell him it was for PTSD or for any impairment. *See* Vega Depo. Tr. at 29: 8–13 ("Q: Oh, okay. So you didn't go into details about, oh, this is for PTSD? A No. Q You just said, I can go get a -- A I can go get a -- yeah. Q -- medical marijuana license?"). And there is nothing in the record to suggest that Mobis regarded Ms. Vega as having a disability. *See* Pl. SOF ¶ 15 ("Admitted that the defendant denies being on notice of plaintiff's PTSD.").

Because Ms. Vega has failed to meet her burden in demonstrating that she is disabled under the ADA, she has not established her *prima facie* case of disability discrimination or failure to accommodate. *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 n.7 (2003) ("If Bockmiller were truly unaware that such a disability existed, it would be impossible for her hiring decision to have been based, even in part, on respondent's disability. And, if no part of the hiring decision turned on respondent's status as disabled, he cannot, *ipso facto,* have been subject to disparate treatment."); *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130–31 (2d Cir. 2010) ("Because Plaintiff did not adduce evidence that his supervisor had knowledge of his disability, he failed to make a *prima facie* showing of discrimination under the ADA.").

Even if Ms. Vega had established her *prima facie* case, on this record, there is not a genuine issue of fact in dispute as to whether Mobis's reason for rescinding her offer letter was pretextual. Mobis contends that it "decided to withdraw her employment offer because of her

10

failure to provide a GED after she made multiple misrepresentations about having one." MSJ Mem. at 11. This is a legitimate, non-discriminatory reason. *See Ahmed v. Am. Museum of Nat. Hist.*, 787 F. App'x 37, 39 (2d Cir. 2019) (finding that the employer "adduced substantial evidence of legitimate, non-discriminatory reasons for its adverse employment decisions" when the employee when "there [was] documentary evidence that [the employee] misrepresented his credentials in his job application materials").

Ms. Vega argues that this reason was pretextual because there is "conflicting testimony as to who on behalf of the defendant actually made the decision to terminate [her]" and Mobis "deviat[ed] from company policy" of providing applicants with six months to secure a GED. Opp'n at 16–17. But this record evidence does not "show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997).

Even assuming conflicting testimony about who made the decision to rescind her offer, and "[v]iewing the evidence in the light most favorable to [Ms. Vega], there are no material inconsistencies that might cause a reasonable jury to doubt [Mobis's] explanation for [Ms. Vega's] discharge from employment." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988). And even assuming that there was a company policy to afford applicants six months to secure a GED, there is no record evidence that Mobis followed this policy for other applicants who made misrepresentations—more than once—about their educational qualifications. *See Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000) ("A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse

11

job action was a pretext for racial discrimination."); *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 495 (2d Cir. 2010) ("Because Mr. Ruiz has not identified a similarly-situated employee who faced equally serious allegations and whom Commissioner Walsh–Tozer allowed to remain on the job, Mr. Ruiz has failed to raise an inference of discrimination."). For these reasons, Ms. Vega's disability discrimination and reasonable accommodation claims under the ADA fail.

For similar reasons, her retaliation claim under the ADA fails. Even assuming Ms. Vega can state a *prima facie* case of retaliation, as discussed above, she has failed to produce sufficient evidence that Mobis's reasons were pretextual. *See Treglia*, 313 F.3d at 721 ("Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." (internal quotation marks omitted)); *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) ("If the plaintiff meets this burden and the defendant then points to evidence of a legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.").

Accordingly, all claims under the ADA will be dismissed.

### B. The Remaining State Law Claims

Having dismissed all of Ms. Vega's federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Klein & Co.*

12

*Futures v. Bd. of Trade of N.Y.C.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Accordingly, the CFEPA and PUMA claims are dismissed without prejudice to refiling in state court.

## IV.    CONCLUSION

For the foregoing reasons, Mobis's motion for summary judgment is **GRANTED**.

**SO ORDERED** at New Haven, Connecticut, this 24th day of July, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

13